**UNITED STATES of America, Appellee,**

**v.**

**Jacob BRACH, also known as Jack, also known as Jack Brock, also known as Jacob Brock, Defendant–Appellant.**

**No. 1204 Docket 90–1742.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1991.

Decided Aug. 15, 1991.

**142**

Nathan Lewin, Washington, D.C. (Edith R. Lampson, Miller, Cassidy, Larroca & Lewin, Washington, D.C., of counsel), for defendant-appellant.

Kerry A. Lawrence, Asst. U.S. Atty. for the Southern District of New York, New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Daniel C. Richman, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and WALKER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Jacob Brach appeals from a judgment of the United States District Court for the Southern District of New York (Broderick, J.) that followed his guilty plea to a charge of wire fraud, 18 U.S.C. § 1343. Brach challenges various determinations made by the district court in arriving at his Guidelines sentence. We affirm.

In early 1989, after a major employer in Randolph, Wisconsin, left the area, Brach entered into negotiations with representatives of Randolph to move a knitting mill there from Brooklyn, New York. During the negotiations, Brach requested a $250,-000 loan from Randolph as a "financial incentive." Randolph officials were agreeable but first requested a personal financial statement from Brach, who had misrepresented that he was a primary owner of the mill. After receiving a statement that falsely reported a net worth of $4,349,135, Randolph made the loan.

Thereafter, Village officials learned that several of Brach's checks to local contractors had bounced and that he was suspected of defrauding two Canadian companies. Becoming concerned, they requested the return of the $250,000. Brach sent a check in that amount, writing on it that it could be deposited only after his agreement to lease the proposed mill building was cancelled. The Village sent him the release he requested and, apparently alerted by the history of bouncing checks, gave him two days in which to remit the $250,000 by wire. Upon his failure to do so, the Village contacted the FBI, which filed a criminal complaint against Brach two days later. Brach then repaid the $250,000. He thereafter waived grand jury indictment and was charged by a felony information.

The complaint against Brach alleged crimes involving two Canadian companies as well as Randolph. It detailed activities by which Brach obtained $198,259 from Union Carbide of Canada and $125,000 from Lecofilms, a division of Tecsyn Canada, Ltd., through a scheme in which Brach fraudulently represented that he had exclusive patent rights to a toilet seat with a self-replacing plastic film. Pursuant to a plea agreement, Brach pled guilty to wire fraud in connection with the Randolph scheme and agreed to repay the Canadian companies the amounts he had received from them. The Government in turn

agreed not to prosecute Brach further for the crimes alleged in the complaint.

In arriving at Brach's sentence, the district court started with the Sentencing Guidelines' base level for Fraud and Deceit of six (§ 2F1.1(a)), added eight points because the loss involved was greater than $200,000 (§ 2F1.1(b)), added two more because the offense involved more than minimal planning (§ 2F1.1(b)(2)(A)), and two more because Brach attempted to obstruct the administration of justice (§ 3C1.1). The court then reduced the total of these calculations by two points because of Brach's acceptance of responsibility (§ 3E1.1(a)). The total offense level of sixteen thus arrived at calls for an imprisonment range of twenty-one to twenty-seven months. The district court sentenced Brach to twenty-seven months' imprisonment and a three-year term of supervised release and imposed a fine of $10,000.

■ Brach challenges these adjustments on several grounds. He contends at the outset that the district court erred in basing the "loss" on the face value of the loan rather than on the value of the temporary use of the $250,000. We disagree. Application Note 7 under section 2F1.1 refers to the commentaries under section 2B1.1 for a discussion of loss valuation. Section 2B1.1 deals with Larceny, Embezzlement, and Other Forms of Theft. Application Note 2 under section 2B1.1 defines "loss" as "the value of the property taken." Application Note 7 under section 2F1.1 states that, "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss."

In cases involving embezzlement or theft, we have interpreted Application Note 2 literally and affirmed sentencing adjustments based on the value of what was taken, not on the ultimate harm suffered by the victim. *See United States v. Cea,* 925 F.2d 56, 57 (2d Cir.1991); *United States v. Parker,* 903 F.2d 91, 104–05 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). We see no reason to follow a different course where,

as in the instant case, the loss was caused by fraud and deceit.

■ Brach's contention that he intended to repay the loan, assuming it to be true, does not change the picture. Brach's crime was complete once he transmitted the false financial statement and obtained the loan. Thereafter, he wrongfully was in possession of $250,000. Under the Guidelines, "loss" includes the value of all property taken, even though all or part of it was returned. *United States v. Cockerham,* 919 F.2d 286, 289 (5th Cir.1990); *United States v. Johnson,* 908 F.2d 396, 398 (8th Cir.1990). It is not restricted to the harm that a defendant intended to inflict but instead may consist of the "probable" loss resulting from the fraud. *United States v. Haddon,* 927 F.2d 942, 951–52 (7th Cir. 1991); *United States v. Davis,* 922 F.2d 1385, 1392–93 (9th Cir.1991). For sentencing purposes, it is enough to recognize that Brach put Randolph at risk for the full amount of $250,000. The district court correctly determined the loss to be $250,000.

Brach's challenge to the district court's minimal planning adjustment is two-pronged. He first contends generally that the district court violated Fed.R.Crim.P. 32(c)(3)(D) by failing to make any findings concerning Brach's activities with the two Canadian companies after Brach contested allegations in the presentence report that he was defrauding those companies. He then makes the specific contention that the district court violated section 1B1.3(a)(1) by considering his Canadian activities in arriving at the adjustment for more than minimal planning.

Rule 32(c)(3)(D) provides in substance that, if a defendant alleges any factual inaccuracy in the presentence report, the court shall make a finding as to the allegation or a determination that no such finding is necessary because the matter controverted will not be considered in sentencing. Contrary to Brach's contention, the record is clear that the district court adopted the findings of the presentence report as to Brach's Canadian activities. The district judge stated, "I accept the findings and the

proposed application in the presentence report," and continued:

> I have considered the activities with respect to the other entities, Union Carbide and Leco Films [sic] in picking a point within the guideline range. Those activities have indicated to me, up to this point, Mr. Brach, you have been engaged in a way of life which involves deceiving and defrauding people on quite a sophisticated level, and in my judgment it is quite appropriate to consider those matters in that wise.

Guidelines section 1B1.4 states that, "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The commentary to Guidelines section 6A1.3 adds that,

> [i]n determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." *United States v. Marshall,* 519 F.Supp. 751 (D.C.Wis.1981), *aff'd,* 719 F.2d 887 (7th Cir.1983); *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978).

In sum, a "sentencing court's discretion is 'largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *United States v. Carmona,* 873 F.2d 569, 574 (2d Cir. 1989) (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)).

■ The district court was not precluded from referring to the presentence report by the fact that much of the information contained therein came from the complaint. The complaint, sworn to by FBI Special Agent Carl Amaditz, was based on a review of bank records as well as interviews that Agent Amaditz and other federal agents conducted with employees of Union Carbide, Lecofilms, and the president of

Sani–Tech Metro, the true holder of the patent and trademark rights to the sanitary toilet seat mechanism. Moreover, the Government elicited substantial corroborating testimony during the sentencing hearing from Robert Flemming of the Wisconsin Department of Development and Albert Owen Thornburgh, Chairman of Randolph's Executive and Finance Committees. Both Flemming and Thornburgh testified that Brach had held himself out as the owner of a company that sold toilet seats with a plastic covering that was replaced automatically and that Brach had shown them a videotape of the toilet seat's operation. The complaint and testimony bore "sufficient indicia of reliability to support [their] probable accuracy" and provided the district court with ample basis to consider evidence of Brach's Canadian activities as it bore on his "background, character and conduct."

In making its more-than-minimal-planning adjustment the district court referred to Brach's activities relating to Union Carbide. However, we are satisfied that the court did so to illustrate Brach's penchant for developing "elaborate" schemes that are "drenched in fraud." The district court did not suggest that Brach's Canadian activities per se played any part in his scheme to defraud the Village of Randolph. To be sure, there was some overlap in the nature of the two schemes. Mr. Thornburgh testified that his first contact with Brach was in connection with the toilet seat mechanism that was the subject of Brach's fraudulent Canadian machinations, and the Village Board was shown the videotape that undoubtedly played a large role in the duping of the Canadian firms. Other than that, there is nothing to indicate that the district court considered Brach's Canadian activities as part of the planning for the commission of his offense against the Village of Randolph.

■ Although in calculating a defendant's offense level a sentencing court may consider only activities relating to the offense for which the guilty plea is entered, the record reflects that Brach engaged in more than minimal planning to commit the

crime to which he pled guilty. Concocting a scheme to move a business that one does not own is not a simple thing to do, particularly when it involves securing a quarter-of-a-million dollar advance from the subject of the fraud. The money that Brach received from Randolph was preceded by extensive negotiations and travel by both Randolph representatives and Brach that extended over many months. It was based upon a false financial statement that was anything but a simple planning device. Indeed, it is safe to say that fraudulent loans in any substantial amount seldom result from minimal planning. *See United States v. Fox*, 889 F.2d 357, 361 (1st Cir.1989). The district court did not err in adjusting Brach's offense level for "more than minimal planning."

■ We have reviewed de novo Brach's argument that the district court erred in enhancing his offense level two points for obstruction of justice under Guidelines section 3C1.1, *see United States v. Bonds*, 933 F.2d 152, 154 (2d Cir.1991), and we reject it. The district judge concluded, based on his review of tapes of telephone conversations between Brach and the Randolph Mayor, that Brach had attempted to intimidate the Mayor into signing a letter to be used at sentencing which would state that the Village's loan to Brach had been approved twice before the Village requested any financial information from him. Not only does this proposed statement violate common sense, it is contrary to the district court's finding that the Village officials "expect[ed] financial statements almost as a matter of course." We too have reviewed the transcripts of those telephone conversations, and we find no error in the district court's holding that Brach's conduct constituted an obstruction of justice.

■ Brach's final argument, based on Application Note 10 of Guidelines section 2F1.1, that the district court should have made a downward departure because the amount of the loan "overstate[d] its seriousness" is without merit. A district court's refusal to depart downward is not appealable unless the refusal was based on the court's mistaken belief that it did not have the discretion to do so. *United States v. Prescott*, 920 F.2d 139, 145–46 (2d Cir.1990). Brach's assertion that Note 10 "requires" a reduction in the amount of actual loss if the accused intends to repay is a misreading of the Note, which provides that in some instances a downward departure "may" be warranted.

In sum, we have considered all of Brach's arguments and find them without merit. The judgment of the district court is affirmed.