UNITED STATES of America, Appellee,

v.

Mark AGWU, Defendant,

Frank Emeka, Defendant–Appellant.

No. 280, Docket No. 93–1203.

United States Court of Appeals, Second Circuit.

Submitted Sept. 21, 1993.

Decided Sept. 22, 1993.

John Burke, Brooklyn, NY, for defendant-appellant.

Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY (Peter A. Norling, Margaret M. Giordano, Asst. U.S. Attys., E.D.N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND, PRATT, and WALKER, Circuit Judges.

PER·CURIAM:

Defendant Frank Emeka appeals from a judgment of conviction entered on March 19, 1993, in the United States District Court for the Eastern District of New York (Reena Raggi, *Judge* ), following a guilty plea to one count of conspiring to utter and possess forged securities of an organization, in violation of 18 U.S.C. §§ 371, 513(a). Defendant was sentenced to a 12–month term of imprisonment, followed by three years of supervised release. Defendant is currently incarcerated.

Defendant contends that the district court erred in calculating the intended loss of his crime based on the total face value of the forged securities he sold or possessed. Defendant was arrested for selling 100 Travelers Express money orders with imprinted values totalling $47,330 to a United States Secret Service agent in exchange for $2500. A subsequent search of defendant's apartment revealed 14 blank Travelers Express money orders, cashiers' checks, a check writer, and a certified Chemical Bank money order in the amount of $950.

The presentence report prepared by the Probation Department calculated the intended loss of defendant's crime as $53,880. This amount was arrived at by adding the $47,330 in imprinted money orders sold to the agent, the $950 certified Chemical Bank check found at defendant's residence, and a figure of $5600, which was the estimated value of the blank money orders also found at defendant's residence. The $5600 figure was reached by calculating the lowest amount imprinted on the money orders sold to the undercover agent, $400, and multiplying that figure by 14, the number of blank money orders.

Defendant objected to this loss calculation. While conceding that it was "technically correct," defendant argued that the figure overstated the seriousness of his offense because it was the government informant who set the amount to be imprinted on the money orders. Defendant urged the court to calculate the loss figure based instead on his expected economic gain of $2500.

■ In *Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Supreme Court recently held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* —— U.S. at ——, 113 S.Ct. at 1915. The district court correctly followed the application notes contained in the commentary to the Sentencing Guidelines in calculating the offense level based on the face value of the seized instruments. Application Note 7 of the Commentary to U.S.S.G. § 2F1.1 provides that "loss is the value of the money, property, or services unlawfully taken." Application Note 2 to U.S.S.G. § 2B1.1, which is cross-referenced in the above Note, states that "[i]n the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed." Based on the face value of the money orders sold to the agent alone, the district court was correct in determining that the intended loss of defendant's crime exceeded $40,000 and warranted the addition of 5 points to his base offense level pursuant to U.S.S.G. § 2F1.1(b)(1).

■ Defendant claims that the loss figure should have been reduced under Application Note 10 to U.S.S.G. § 2F1.1, which states that "[i]n a few cases the loss determined under subsection (b)(1) may overstate the

seriousness of the offense." In *United States v. Brach*, 942 F.2d 141 (2d Cir.1991), we ruled that a district court's decision not to reduce the loss figure under Application Note 10 constituted a non-appealable refusal to depart downward. *Id.* at 145. *Brach* referred to an earlier version of Application Note 10, which specifically characterized reductions under the note as "downward departure[s]." Although the present form of Application Note 10, which became effective on November 1, 1991, pursuant to Amendment 393 to the United States Sentencing Commission Guidelines Manual, does not include this language, it is clear to us that a district court's decision not to reduce the loss figure pursuant to this note still constitutes a refusal to make a downward departure. As such, it is not appealable unless the refusal was based on the court's mistaken belief that it did not have the discretion to do so. *Id.*

The district court here fully realized that it could decrease the loss figure pursuant to Application Note 10, but declined to do so, stating "I'm not going to depart downward and let me state my reasons." The court observed that calculating the loss figure based on defendant's expected economic gain understated the seriousness of the offense, opting instead to determine loss based on the face value of the instruments because defendant "was readily willing to write that [amount] in and accept responsibility for that kind of a loss resulting." Accordingly, since the district court's decision was a refusal to downwardly depart in full appreciation of its discretion to do so, that decision is not appealable.

For the reasons set forth above, the appeal is dismissed.