UNITED STATES of America,

v.

Paul C. CHARTIER, Defendant.

No. CR 89–105 '(ADS).

United States District Court,
E.D. New York.

June 28, 1994.

**20**

Zachary W. Carter, U.S. Atty., E.D.N.Y. by Asst. U.S. Atty., David C. James, Brooklyn, NY, for Government.

John H. Jacobs, by Ian Lowell Heller, New York City, for defendant.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

On October 11, 1991, the defendant Paul C. Chartier was re-sentenced by this Court to a term of imprisonment of 236 months, with credit for time served since January 30, 1989. The defendant appealed this sentence to the Court of Appeals for the Second Circuit and the sentence was affirmed (*See United States v. Chartier,* 970 F.2d 1009 [2d Cir.1992] ). Now, the defendant moves pursuant to 28 U.S.C. § 2255 for a Order vacating the sentence of 236 months or, in the alternative, granting the defendant another *Fatico* hearing. The basis for this motion is the addition of Application Note 9 to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 1B1.3, effective November 1, 1992, which provides a definition of "common scheme or plan" which was neither available to this Court at the time of the *Fatico* hearing nor to the Second Circuit at the time of appeal.

Since the facts of this case are well known to the Court and the parties, the Court will not restate them, except as is needed to address the defendant's motion.

### DISCUSSION

#### Availability of Section 2255 Petition:

■ The granting of a federal writ of habeas corpus is governed by 28 U.S.C. § 2255 which provides, in relevant part, that:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence" (28 U.S.C. § 2255).

In addressing the ability of a criminal defendant to make a motion pursuant to 28 U.S.C. § 2255 after an appeal, the Second Circuit stated that:

"While section 2255 does not expressly authorize the court to refuse to entertain an otherwise appropriate section 2255 petition on the ground that the point raised [in the habeas petition] had previously been decided on direct appeal, *numerous cases have held that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.* Several of these are from our circuit. [citations omitted] ... While this rule may not apply in certain circumstances, e.g., where the issues were not raised on direct appeal due to ineffective assistance of counsel, see *Dozier v. United States District Court,* 656 F.2d 990, 992 (5th Cir. 1981), or where an intervening change of law occurred, *United States v. Loschiavo,* 531 F.2d 659, 662–66 (2d Cir.1976), such circumstances are not presented here" (*Barton v. United States,* 791 F.2d 265, 267 [2d Cir.1986] [emphasis added] ).

Recently, the Second Circuit reiterated the rule that "[a] § 2255 petition may not be used as a substitute for direct appeal" (*Marone v. United States,* 10 F.3d 65, 67 [2d Cir.1993] [citing *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982) ] ).

In the present case, the petitioner has already appealed his sentence. In fact he has had two appeals. The first appeal (*United States v. Chartier*, 933 F.2d 111 [2d Cir. 1991]) remanded the case to this Court for the purpose of conducting a *Fatico* hearing to address whether the four robberies involving the defendant Chartier in 1974 were part of a "common scheme or plan", for purposes of determining whether the defendant Chartier was a "career offender" for sentencing purposes.

After this Court found that the four robberies were not part of a common scheme or plan and the defendant was resentenced, the Second Circuit affirmed both the determination that there was no common scheme or plan as well as the new sentence imposed (*United States v. Chartier*, 970 F.2d 1009 [2d Cir.1992]). Both appeals squarely addressed the issue about whether the defendant Chartier's four robberies in 1974 were part of a common scheme or plan.

The defendant Chartier now moves pursuant to Section 2255, once again based on the assertion that his actions in 1974 were part of a common scheme or plan. Since "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal" (*Barton, supra*, 791 F.2d at p. 267), the Court may not consider this motion, unless the Section 2255 motion is based on: (1) an ineffective assistance of counsel claim; or (2) an intervening change of law (*See Barton, supra*, 791 F.2d at p. 267). The Court finds that neither of these exceptions are present in this case.

Chartier does not assert an ineffective assistance of counsel claim, and further expressly states that the definition of the term "common scheme or plan," as set forth in Application Note 9 to Guidelines Section 1B1.3, "do[es] not constitute a substantive change in the law. *The substantive law is therefore no different*, just more clearly defined" (Defendant's Memorandum of Law, at p. 11 [emphasis added]). Accordingly, since the defendant does not raise either an ineffective assistance of counsel claim or that there was an intervening change in the law, the Court may not consider a petition by Chartier, pursuant to 28 U.S.C. § 2255,

based upon the assertion that the robberies committed in 1974 were not part of a common scheme or plan (*See Barton, supra*, 791 F.2d at p. 267).

Further, in addressing the application of a new rule retroactively, the Supreme Court has stated that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect *in all cases still open on direct review* and as to all events, regardless of whether such events predate or postdate our announcement of the rule" (*Harper v. Virginia Dep't of Taxation*, — U.S. —, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 [1993] [emphasis added]). Here, since this case is not "still open on direct review" and only before the Court on a petition for a writ of habeas corpus, a collateral review, the Court cannot apply a new interpretation of "common scheme or plan" to this review.

However, in the interest of completing the record, the Court will address the merits of the defendant's contentions in this petition with regard to the issue of a "common scheme or plan."

### Common Scheme or Plan:

In sentencing the defendant Chartier, the Court was required to determine whether he was a career offender, within the meaning of Guidelines Section 4B1.1 which states the following:

> "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense ..." (U.S.S.G. § 4B1.1).

According to the definitions supplied in this section of the Guidelines, the term "two prior felony convictions" means:

> "(A) the defendant committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense ... and (B) the sentences for at least two

of the aforementioned felony convictions are *counted separately under the provisions of Part A of this Chapter*" (U.S.S.G. § 4B1.2 [emphasis added]).

The standard for determining whether prior felony convictions are "counted separately" is set forth in Guidelines Section 4A1.2(a)(2) which states that:

"Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in *related cases* are to be treated as one sentence for purposes of criminal history ..." (U.S.S.G. § 4A1.2[a][2] [emphasis added]).

The commentary defines "related cases" as follows: "Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing" (U.S.S.G. § 4A1.2, Application Note 3 ["Related Cases"]). It was the contention of the defendant Chartier, at sentencing, that a number of his prior robberies should be considered part of a "single common scheme or plan" for purposes of determining whether he was a career offender.

The Court conducted a *Fatico* hearing and made factual findings on the issue of whether the four robberies committed in 1974 were part of a "single common scheme or plan". The findings were set forth in the Court's October 11, 1991 written decision, and include the following:

"Considering all of the circumstances of the four prior armed robbery felony convictions, this Court finds that the four prior felony convictions were not 'related' within the meaning of the Sentencing Guidelines.

First, all four robberies, three in New York, one in Massachusetts, were charged in separate indictments, and there was no charge of conspiracy linking any of these substantive offenses. Further, the state authorities never joined the offenses for purposes of investigation or prosecution.

Second, accepting all of the defendant's testimony as true, Chartier has not offered any proof that the four felonies were 'related' or part of a 'single common scheme or plan'. What has been established is that the four armed robberies involved the same defendant, who committed the same types of crimes, employed the same *modus operandi*, and claims they were all done to support his heroin addiction. The precedent from the Circuits is clear that the *mere similarity of separate crimes committed within a short period of time does not create a 'common plan or scheme' so as to avoid career offender status*. This is the precise factual situation rejected by the *Rivers* and *Kinney* courts. In fact, the Fourth Circuit in *Rivers* found that the District Court's findings of 'career offender' based upon such similar crimes committed within twelve days to be clearly erroneous and determined the issue on appeal as a matter of law. Chartier has offered no evidence other than his allegation that the crimes were all committed to support his drug habit and that they were committed in a similar manner, to support his contention that the four crimes, committed in two states, were related or committed pursuant to a common scheme or plan.

In a letter dated September 20, 1991, from Ian Lowell Heller, Esq., counsel to the defendant's attorney, he states at page three:

'Indeed, if the facts testified to by Mr. Chartier do not provide the basis to a finding of common scheme or plan, it is unlikely that any facts or circumstances could be defined as such. If this is not a common scheme or plan, nothing is!'

We know from a review of the pertinent precedents that crimes committed in a similar *manner*, does not necessarily mean that they are part of a 'single common *plan* or scheme'.

Theoretically, perhaps if the defendant and his co-perpetrators sat around a table on October 30, 1974 and planned two consecutive robberies of two predetermined locations, on two predetermined dates, that may be sufficient to establish a common plan or scheme.

Here, the defendant conceded that the crimes were committed, albeit in a similar manner, when his money ran out and he decided he needed additional funds to sup-

port his drug habit. These decisions to rob were four separate occasions and were not related or part of a common scheme or plan" (*United States v. Chartier*, 775 F.Supp. 582, 587 [E.D.N.Y.1991], *aff'd*, 970 F.2d 1009 [2d Cir.1992] [emphasis added] ).

It was based upon the above factual and legal determinations, that this Court found that the four 1974 robberies were not part of a "single common scheme or plan" and therefore each robbery was a separate prior felony for purposes of determining the defendant's status as a career offender (*See* U.S.S.G. § 4B1.1). Thereafter, the defendant was sentenced to a term of imprisonment of 236 months, based on his status as a career offender.

In addressing the issue of what constitutes a common scheme or plan and affirming the findings of this Court in the *Chartier* case, the Second Circuit stated:

"In the career offender context ... we think it is clear that the term 'single common scheme or plan' *must have been intended to mean something more than simply a repeated pattern of criminal conduct*. A defendant may follow the same course of conduct, by *e.g.*, engaging in criminal acts, performing certain roles in the crimes, and repeating those acts and reprising those roles. His pattern, however, even if repeated within a short period of time, *see, e.g., United States v. Butler*, 970 F.2d 1017, 1027 (2d Cir.1992) (two robberies 15 minutes apart), does not necessarily mean that he has acted pursuant to a single common scheme or plan. *The concept of 'scheme' or 'plan' involves subjective as well as objective elements,* though the subjective elements may of course be inferable from events that are objectively observable (*United States v. Chartier*, 970 F.2d 1009, 1016 [2d Cir.1992] [emphasis added] ).

Having fully availed himself of the appellate process on this issue of "common scheme or plan", the defendant now asserts in his Section 2255 motion that both this Court and the Second Circuit improperly concluded that the four robberies committed in 1974 were part of a common scheme or plan.

The defendant contends that subsequent to his sentencing on October 11, 1991, the Federal Sentencing Guidelines were amended to include a definition of common scheme or plan which is at odds with the Court's interpretation and that this new definition should control. This description is presently contained in an "Application Note" to Guidelines Section 1B1.3 (*See* Amendment 439, effective November 1, 1992). This new "Application Note" reads as follows:

9. "Common scheme or plan" and "same course of conduct" are two closely-related concepts.

(A) *Common scheme or plan*. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; *i.e.*, the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of *modus operandi* (the same or similar computer manipulations were used to execute the scheme).

It is the position of the defendant Chartier that since the Court found that the four robberies in 1974 involved the same perpetrators and *modus operandi*, that the Sentencing Guidelines amendment requires the Court to find, as a matter of law, that the acts were part of a common scheme or plan within the meaning of the career offender provision of the guidelines.

At the outset, the Court notes that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline" (*Stin-*

*son v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 [1993] ); *see also United States v. Agwu,* 5 F.3d 614 [2d Cir.1993] [citing *Stinson, supra,* —— U.S. at p. ——, 113 S.Ct. at p. 1915] ). The Supreme Court stated that:

> "[t]he Commission, after all, drafts the guidelines as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute" (*Stinson, supra,* —— U.S. at p. ——, 113 S.Ct. at p. 1919).

■ The portion of Section 1B1.3 which discusses a court's consideration of a "common scheme or plan," for purposes of sentencing, only addresses offenses which are "of a character for which § 3D1.2(d) would require *grouping of multiple counts,*" (U.S.S.G. § 1B1.3[a][2] [emphasis added] ). The Court notes, however, that Section 3D1.2(d) does not apply to crime of robbery, the type of offense at issue in the case (*See* U.S.S.G. § 3D1.2[d] [does not apply to Robbery—§ 2B3.1] ).

In a decision addressing the grouping of offenses pursuant to Guidelines Section 3D1.2, the Second Circuit stated that "offenses that involve 'multiple, separate instances of fear and risk of harm,' such as 'robbery of the same victim on different occasions,' *should not be grouped*" (*United States v. Miller,* 993 F.2d 16, 21 [2d Cir.1993] [emphasis added] ). Therefore, this Court finds that the Application Note at issue, aids in the interpretation of what constitutes a "common scheme or plan" for purposes of "grouping" offenses, but not for offenses which may not be "grouped" under the Guidelines. Apparently, this definition was not intended by the Sentencing Commission to be used in determining whether a series of robberies were part of a common scheme or plan because robberies are expressly excluded from those offenses which may be "grouped" for purposes of the Guidelines.

■ In fact, the example used by Application Note 9(A) is a fraud scheme. Fraud (*see*

Sentencing Guidelines Section 2F1.1), is specifically *included* as one of the categories of offenses which may be "grouped" for purposes of Guidelines calculations (*See* U.S.S.G. § 3D1.2). On the contrary, robbery is a crime which is "[s]pecifically *excluded* from the operation of this subsection" (U.S.S.G. § 3D1.2 [emphasis added] ). Accordingly, in this Court's view, Application Note 9 to Guidelines Section 1B1.3 is inapplicable in a Court's determination of whether a series of robberies constitute a common scheme or plan, for purposes of determining whether a defendant is a career offender. Therefore, the Court's prior determination that the four bank robberies were not part of a common scheme or plan may not be altered by the addition of Application Note 9, which does not apply to the crime of robbery.

■ Further, even if Application Note 9 were applicable to a situation involving a series of robberies, this Court finds that the facts do not support a "common scheme or plan" even within the meaning of Application Note 9, as interpreted by this Court.

The Second Circuit clearly articulated that "[i]n the career offender context ... we think it is clear that the term 'single common scheme or plan' must have been *intended to mean something more than simply a repeated pattern of criminal conduct*" (*Chartier, supra,* 970 F.2d at p. 1016 [emphasis added] ). Indeed, it appears to the Court that the Sentencing Commission also agrees with this statement. The reason for this belief is that the Commission specifically provided, *elsewhere,* for a category of offenses which are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of events" but, yet, are not a "common scheme or plan". This category is termed the "same course of conduct" (*See* U.S.S.G. § 1B1.3, Application Note 9[A] ). The definition of the "same course of conduct" reads as follows:

> (B) *Same course of conduct. Offenses that do not qualify as part of a common scheme or plan* may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to

each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses and the time interval between the offenses. The nature of the offenses may also be a relevant consideration (*e.g.*, a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals [emphasis supplied] ).

The Second Circuit has stated that the terms " 'same course of conduct' and 'common scheme or plan' are *not synonymous*" (*Chartier, supra,* 970 F.2d at p. 1015–16 [emphasis added] [*citing United States v. Perdomo,* 927 F.2d 111, 114–15 (2d Cir.1991); *United States v. Santiago,* 906 F.2d 867, 871–73 (2d Cir.1990) ] ).

The Court notes that the testimony at the *Fatico* hearing demonstrated that these robberies were not part of a "common scheme or plan" because there was no "scheme" or "plan" which related to all of the robberies, other than the fact that the object was to obtain money for heroin. Specifically, the defendant Chartier, the sole witness at the *Fatico* hearing, testified as follows:

"[MR. JAMES]: In fact, sir, I think you told us on your direct testimony, and I wrote this as near as I could, if I am not reciting this correctly tell me, that in 1974, after your first robbery at the Burger King, you said you ran out of money real fast, then you and Mr. Taylor and Mr. Massaro decided to rob other places, is that so?

[MR. CHARTIER]: Yes.

Q. So you had not decided when you robbed the Burger King you were going to rob in the future?

A. We knew we were going to rob. We didn't know the date or place?

     \*      \*      \*      \*      \*      \*

Q. And you told us just before, when you are using heroin and living for the minute, correct?

A. Yes, sir.

     \*      \*      \*      \*      \*      \*

[A]. Yes. Like I said, we didn't say well, on November 9, November 25, we are going to go here and rob this and then rob that, but we hooked up as a team to rob in the same fashion, you know, whenever we needed the money that's what we were going to do.

Q. You told us on your direct testimony you ran out of money real fast and then you decided to rob banks after you committed the Burger King robbery?

A. It was decided to go back. We only got a certain amount of money to just change the robbery from a Burger King to a bank.

Q. And you also told us on your direct testimony, sir, that you decided to go up to Massachusetts to rob the bank up there, after things got hot for you in New York, because you had committed two robberies in New York, is that fair to say?

A. Yes.

Q. So you didn't decide to go to Massachusetts until after you had robbed the second bank, the bank in New York, correct?

A. Correct.

Q. You also told us again, on your direct testimony, that after you came back from Massachusetts to Valley Stream, you said when we came back John said 'We have to do another bank?'

A. Yes, sir.

Q. It's fair to say then you had not decided to do another bank until you came back to New York?

A. Well, let me try to explain. We were partners in this. We had a common way of doing this and that's how we were going to do it. *Like I said before, the dated were not planned out. The places were not planned out.* The M O and the way we did it and everything that was one thing. Like I said, if I didn't get caught at that time I am sure there would have been another one, you know.

Q. *Had you planned to do another one?*

A. *Not a certain place or time, no, because we had money.*

Q. In other words, when the money ran out then you might decide to rob another place?

A. We definitely were going to rob another place.

Q. But you told us in 1988—

THE COURT: You mean the Valley Stream Bank money, when that ran out then you would decide to rob another bank?

THE WITNESS: We knew we were going to rob a bank when the money ran out. But when it got down too real low, that's when we looked, you know (Transcript of *Fatico* Hearing, Sept. 13, 1991, at pp. 23–26 [emphasis supplied] ).

At most, this testimony evidences a robbery "spree" by the defendant or an "ongoing series" of robberies. This criteria, according to Application Note 9, addresses the category of events which go under the rubric of the "same course of conduct" which is different than a "common scheme or plan" (*See Chartier, supra,* 970 F.2d at p. 1015–16).

In *United States v. Washington,* 898 F.2d 439 (5th Cir.), *cert. denied,* 498 U.S. 842, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990), the defendant robbed a convenience store and then escaped. After a few hours passed, he returned to the same convenience store and robbed it again, in fact it was the same clerk. In holding that the two robberies arose out of multiple criminal episodes, the Fifth Circuit stated

"the fact that Washington robbed the same store clerk at the same Majik Market is not dispositive. Washington's two robberies were separate criminal episodes because he committed the first, completed it, and escaped; then, after a few hours of no criminal activity, Washington returned to commit the second crime" (*Washington, supra,* 898 F.2d at p. 442; *see also United States v. Miller,* 903 F.2d 341 [5th Cir. 1990] [finding that six robberies with different victims at different places were not part of same transactions or occurrences] ).

Similarly, in *United States v. Moore,* 877 F.2d 651 (8th Cir.1989), the Eighth Circuit stated "[w]hile Moore aimed all three robberies at the same physical target, they were separate and distinct criminal acts committed several weeks apart. Thus, the district court did not commit error in refusing to treat Moore's multiple convictions as a single offense under the sentencing guidelines" (*Moore, supra,* 877 F.2d at p. 652).

Therefore, even if the Court were to apply Application Note 9, the Court finds that the facts of this case, as determined at the *Fatico* hearing do not demonstrate a "common scheme or plan" within the meaning of that Note.

### CONCLUSION

Based on the foregoing, the motion by the defendant pursuant to 28 U.S.C. § 2255 is denied on four alternative grounds:

First, that Section 2255 is not available to the defendant Chartier.

Second, that if Section 2255 applies to this defendant, Application Note 9 may not be applied by the Court on collateral review.

Third, if Application Note 9 may be applied on collateral review, it does not apply to a situation in which a court is determining whether a defendant is a career offender for a series of robberies, since robberies may not be grouped under the Guidelines.

Fourth, even if Application Note 9 applies to offenses which may not be grouped, the robberies committed in 1974 by the defendant Chartier may, at most, be part of the "same course of conduct" but not a "common scheme or plan" within the meaning of the Guidelines.

The defendant's motion is denied.

**SO ORDERED.**