101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES OF AMERICA, Appellee,
v.
BRIAN THOMAS; LESLYE HUISWOUD, Defendants-Appellants,
STEVEN ENGLER, Defendant.
 Nos. 95-1715, 96-1013.
 United States Court of Appeals,
Second Circuit.
 July 2, 1996.
 
 Martin G. Fogelson, New York City, for Defendant-Appellant Brian Thomas.
 Christine E. Yaris, New York City, for Defendant-Appellant Leslye Huiswoud.
 Thomas C. Rubin, Assistant United States Attorney for the Southern District of New York, New York City, for Appellee.
 Present: MAHONEY, McLAUGHLIN, Circuit Judges, CARMAN, Judge.*
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 3
 1. Defendants-appellants Brian Thomas and Leslye Huiswoud appeal from judgments entered December 21, 1995 in the United States District Court for the Southern District of New York that convicted them, following a jury trial, of conspiring to commit bank fraud and wire fraud, to enter a bank with intent to commit a felony, and to make forged checks in violation of 18 U.S.C. § 371, and convicted Thomas of two counts of bank fraud in violation of 18 U.S.C. § 1344. The convictions stemmed from defendants-appellants' attempts to use a fraudulent Chase Manhattan Bank letter of credit and to negotiate stolen checks. On appeal, defendants-appellants raise various challenges to their convictions and sentences, all of which are without merit.
 
 
 4
 2. Thomas and Huiswoud argue that the district court committed reversible error when it allowed Lana Cooper, a coconspirator and cooperating witness, to testify regarding defendants-appellants' prior uncharged use of drugs and fraudulent credit cards and about Thomas' sexual relations with Cooper and Huiswoud. We disagree. Cooper's testimony was properly admitted pursuant to Rule 404(b) of the Federal Rules of Evidence because it served " 'to inform the jury of the background of the conspiracy charged,' 'to complete the story of the crimes charged,' and to 'help[ ] explain to the jury how the illegal relationship between [participants in the crime] developed.' " United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.1990) (quoting United States v. Harris, 733 F.2d 994, 1006 (2d Cir.1984), and United States v. Brennan, 798 F.2d 581, 589-90 (2d Cir.1986) (alterations in Roldan-Zapata )), cert. denied, 499 U.S. 940 (1991). Evidence establishing the basis for the coconspirators' relationship of mutual trust was especially appropriate in this case, given Huiswoud's defense that she had no knowledge of her coconspirators' activities and that Cooper had taken advantage of Huiswoud. Accordingly, the district court did not abuse its discretion in admitting Cooper's testimony. See United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir.1993) (trial court decision to admit evidence reviewed for abuse of discretion), cert. denied, 114 S.Ct. 1565, 1864 (1994).
 
 
 5
 3. Thomas claims that the prosecution improperly vouched for the credibility of government witnesses during its closing argument. However, the prosecution merely emphasized that three government witnesses had signed cooperation agreements under which they were obliged to tell the truth, and that the witnesses could only benefit from the cooperation agreements by telling the truth. Remarks such as these are permissible under our precedents, especially in view of defendants-appellants' strenuous attacks upon the witnesses' credibility. See United States v. Arroyo-Angulo, 580 F.2d 1137, 1147 (2d Cir.), cert. denied, 439 U.S. 913, 1005 (1978), 1131 (1979); United States v. Ricco, 549 F.2d 264, 274 (2d Cir.), cert. denied, 431 U.S. 905 (1977).
 
 
 6
 4. Huiswoud faults the district court for instructing the jury, with specific reference to statements made by Huiswoud "at the time of her arrest," that:
 
 
 7
 False exculpatory statements are circumstantial evidence of a defendant's consciousness of guilt and have independent probative value. If you find that the defendant gave a false statement in order to divert suspicion from herself, you may, but are not required to, draw the conclusion that the defendant believed that she was guilty. You may not, however, draw the conclusion on the basis of this alone, that the defendant is, in fact, guilty of the crime for which she is charged.
 
 
 8
 5. Huiswoud made two conflicting statements to the police at the time of her arrest, the first of which she later disavowed. Huiswoud argues that because her second statement was consistent with her trial testimony, the district court's charge, insofar as it referred to her second statement, impermissibly cast doubt on Huiswoud's trial testimony. We disagree. False exculpatory statements made to law enforcement officials are circumstantial evidence of a defendant's consciousness of guilt, and it is proper for the district court to so instruct the jury. See United States v. Strother, 49 F.3d 869, 876-77 (2d Cir.1995). Here, the government presented evidence suggesting that Huiswoud's exculpatory statements were false. Thus, there was no error in the district court's instruction that if the jury believed Huiswoud's statements to have been false, it was permitted to infer consciousness of guilt. See id.; United States v. Wells, 702 F.2d 141, 143-44 (8th Cir.1983).
 
 
 9
 6. Finally, Huiswoud challenges several aspects of her sentencing. First, she argues that in determining her offense level pursuant to United States Sentencing Guideline § 2F1.1, the district court improperly calculated the amount of loss attributable to the stolen checks and the forged letter of credit. We reject at the outset Huiswoud's contention that § 2F1.1(b)(1) loss adjustments do not apply when there is no reasonable likelihood that the fraudulent scheme will succeed. See United States v. Falcioni, 45 F.3d 24, 27 (2d Cir.1995); United States v. Joetzki, 952 F.2d 1090, 1096-97 (9th Cir.1991); see also USSG § 2F1.1, comment. (n. 10) (downward departure may be warranted "where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it"); United States v. Agwu, 5 F.3d 614, 615-16 (2d Cir.1993) (per curiam) (district court's refusal to depart downward in accordance with USSG § 2F1.1, comment. (n. 10) not appealable unless based upon court's mistaken belief that it lacked authority to depart).
 
 
 10
 7. Nor was there error in the district court's attribution to Huiswoud of a three million dollar loss amount with respect to the checks. Because no financial loss was actually inflicted as a result of Huiswoud's offenses, the district court properly used as the loss amount the "intended loss that the defendant was attempting to inflict." USSG § 2F1.1, comment. (n. 7); see also United States v. Reese, 33 F.3d 166, 174 (2d Cir.1994), cert. denied, 115 S.Ct. 756 (1995). Under the Guidelines, the intended loss when a forged check is represented as genuine is the face value of the check, see USSG § 2F1.1, comment. (n. 7), which in this case was nearly eighteen million dollars. Assuming, without deciding (as the district court did), that the reasonable foreseeability analysis of United States v. Studley, 47 F.3d 569, 573-75 (2d Cir.1995), applies in this case, we conclude that the district court did not clearly err in finding that three million dollars in intended loss was foreseeable to Huiswoud.
 
 
 11
 8. Similarly, we find no error in the district court's use of the conspirators' intended profit of two million dollars as the loss amount with respect to the fraudulent letter of credit. Although defendants-appellants' use of the fraudulent $100 million letter of credit was not likely to result in losses totalling $100 million, the letter nevertheless exposed both Chase Manhattan Bank and any party relying upon the letter of credit to significant financial risks. Furthermore, when loss or intended loss cannot be determined with precision, the Sentencing Guidelines support reasonable alternative estimates of loss, including the use of "[t]he offender's gain from committing the fraud." USSG § 2F1.1, comment. (n. 8).
 
 
 12
 9. Finally, we affirm the district court's refusal to award Huiswoud a downward departure based on her alleged role as a minor participant in the conspiracy. On the record developed in this case, the district court's conclusion that Huiswoud played a significant role (including making possible the theft of the checks and planning to participate in the profit to be derived from the letter of credit transaction) in the execution of the conspiracy was not clearly erroneous. See United States v. Shonubi, 998 F.2d 84, 90 (2d Cir.1993) (assessment of defendant's role in offense is highly fact-specific).
 
 
 
 *
 The Honorable Gregory W. Carman of the United States Court of International Trade, sitting by designation