**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4579**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LISA WILSON,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Joseph Robert Goodwin, District Judge. (6:05-cr-00254-ALL)

Submitted: September 29, 2006          Decided: October 27, 2006

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, Edward H. Weis, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Charles T. Miller, United States Attorney, Joanne Vella Kirby, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Lisa Wilson pled guilty to embezzlement of bank funds by a bank employee. On appeal, she challenges the district court's loss calculation under the Sentencing Guidelines. She also asserts that her sentence was unreasonably harsh. We vacate the loss determination and remand for further proceedings.

Wilson was employed by Branch Banking and Trust ("BB&T") as a relationship banker who assisted customers with Certificate of Deposit ("CD") accounts. After two customers complained that money had been removed from their CD accounts without permission, BB&T conducted an investigation which showed that Wilson had conducted twenty-eight improper transactions with customers' CD accounts, involving a total of $58,760.39. Of that amount, $40,560.39 came from withdrawals, while $18,200 constituted deposits into customer accounts. The amount of money Wilson actually removed from the accounts for her personal use was $22,360.59. Wilson stated that, after embezzling that amount of money, she made fraudulent transfers from one CD account to another in order to "fix" the problem.

At sentencing, Wilson argued for a loss amount of $22,360.59, representing the amount removed from BB&T. The district court overruled the objection, stating that "the money was used to perpetrate the fraud. It was part of the money that was put at risk . . . I think we ought to measure this by the entire

sum of money that was misappropriated, regardless of whether some of it was placed in another depositor's account in an attempt to cover it up." Thus, the court calculated the loss to be $40,560.39, representing all of the withdrawals, including the withdrawals that were transferred into other customers' accounts. The court imposed a sentence of eight months.[1] Wilson timely appeals.

Because there are no factual disputes in this case, we review the district court's interpretation of the term "loss" de novo. See United States v. Hughes, 401 F.3d 540, 557 (4th Cir. 2005). "Loss" is defined as "the greater of actual loss or intended loss." USSG § 2B1.1, cmt. (n.3(A)). Defendants' sentences should reflect "the nature and magnitude of the loss caused or intended . . . [L]oss serves as a measure of the seriousness of the offense and the defendant's relative culpability." USSG § 2B1.1, cmt. (backg'd).

The district court correctly determined that Wilson should be responsible for all funds she "put at risk." See United States v. Johnson, 993 F.2d 1358, 1359 (8th Cir. 1993); United States v. Brach, 942 F.2d 141, 143 (2d Cir. 1991). However, contrary to the district court's conclusions, the funds transferred

---

[1]The district court sentenced Wilson at the low end of the guideline range. Had the court adopted Wilson's argument regarding the loss amount, the guideline range would have been four to ten months imprisonment.

from one account to another were never "at risk." There is no evidence that any of Wilson's deposits gave a customer access to more money than had been in their accounts originally. Thus, even if every customer who had benefitted from Wilson's deposits withdrew all the funds in their accounts, BB&T would still have only suffered a loss of $22,360.59.[2] Because Wilson never removed more than $22,360.59 from BB&T and because she never intended to remove more than that amount,[3] the district court erred in determining that she placed over $40,000 "at risk." See Johnson, 993 F.2d at 1359 (holding that "misapplied funds" which were never removed from the credit union were never "at risk" and should have been excluded from loss calculation).[4]

---

[2]Wilson essentially removed $22,360.59 from CD accounts for her own use. She then moved $18,200 from other accounts into the pilfered accounts. Thus, the only loss to BB&T was $22,360.59. The remaining withdrawals and deposits merely changed the accounts from which this money was missing, not the amount missing.

[3]The Government argues that, even if Wilson did not remove $40,560.39 from BB&T, she intended to do so. There is no evidence to support this conclusion. The PSR states that, after fraudulently obtaining funds that she used for personal expenses, Wilson "realized she had to 'fix' the situation and began making other fraudulent withdrawals from other customer accounts to replace that which she had taken." In addition, she voluntarily left her employment with BB&T prior to her crimes being discovered, so there was no intent to inflict any future harm. The Government presented no evidence at the sentencing hearing to contradict these conclusions.

[4]The Government argues that Johnson is no longer good law in light of United States v. Hulshof, 23 F.3d 1470 (8th Cir. 1994). However, in Hulshof, the funds that were misapplied were actually put at risk. The defendant "improperly indebted the line of credit of a bank customer . . . and improperly credited that amount to the

- 4 -

Accordingly, we vacate Wilson's sentence and remand for further proceedings consistent with this opinion. We decline to address her second argument concerning the reasonableness of her sentence at this time. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

---

loan accounts of two other bank customers." Although the bank suffered no actual loss in the end, that was only "because of the recovery of the farm economy in 1998, which enabled the defendant to reverse the entries which he had previously made." Id. at 1471-73.