**Fred SCHNEIDER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CV 92–3850.**

United States District Court, E.D. New York.

Dec. 1, 1993.

Fred Schneider, petitioner pro se.

Zachary Carter, U.S. Atty. by Burton T. Ryan, Asst. U.S. Atty., Garden City, NY, for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

On April 3, 1991, Fred Schneider ("Schneider" or "petitioner") pled guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, two counts of filing false and fraudulent income tax returns in violation of 26 U.S.C. § 7602 and one count of filing a false and fraudulent return while released on bail in violation of 26 U.S.C. § 7602(2) and 18 U.S.C. § 2147. On June 27, 1991, Schneider was sentenced to a total jail term of five years and ten days. Presently before the Court is Schneider's motion to set aside his sentence pursuant to 28 U.S.C. § 2255 on the grounds that: (1) the government acted in bad faith when it

failed to move for downward departure pursuant to § 5K1.1 of the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines"); (2) recent amendment of the Sentencing Guidelines supports a three point reduction for acceptance of responsibility instead of the two point reduction afforded Schneider; and (3) he was denied effective assistance of counsel. For the reasons stated below, petitioner's motion is denied in all respects.

### I. BACKGROUND

On April 3, 1991, petitioner, in the presence of his attorney, entered into a written plea agreement with the government. This Court accepted the plea agreement in which Schneider stipulated that he caused a $1.5 to $2 million dollar tax loss to the government and agreed, among other things, "to be fully debriefed, and to attend all meetings at which his presence is requested, concerning his participation in and knowledge of any matters about which the Office may inquire." Plea Agreement at 4. Schneider also agreed to furnish the government with "all documents and tangible objects that may be relevant to the investigation and that are in his possession, custody or control ..." Plea Agreement at 5.

In return, the government committed itself to file a § 5K1.1 letter, if it determined that petitioner "cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of [the plea] agreement." Plea Agreement at 6. Additionally, the plea agreement stated that it is "understood that the Office's determination of whether FRED SCHNEIDER has cooperated fully and provided substantial assistance, and the Office's assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him." Id. at 6–7.

As a result of this agreement, Schneider met with Internal Revenue Service ("I.R.S.") agents on numerous occasions. Schneider's attorney did not accompany him to these debriefing meetings. Schneider claims that he "appeared nervous and unsure of himself" at these meetings because his attorney was not present and he feared that he would open

himself up to other criminal charges if he answered the agents' questions in a more "confident" manner. Schneider also concedes in his petition there were "a few questions" he "could not answer." The government thereafter informed Schneider's counsel that Schneider had failed to provide substantial assistance and that as a result the government would not move for a sentencing reduction pursuant to § 5K1.1.

At sentencing, Schneider, who was represented by counsel, did not object to the government's failure to submit a § 5K1.1 letter. Rather, petitioner's attorney requested the opportunity to have Schneider cooperate in the future, with a view towards a reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. In a letter dated July 11, 1991, the government requested that any information Schneider desired to share with the government should be made in a detailed written narrative form. No such narrative was ever delivered to the government.

Petitioner now claims that his sentence should be set aside because the government's failure to submit a § 5K1.1 letter was arbitrary and in bad faith. He claims that he did provide the government with substantial assistance and that as a result of this assistance, the I.R.S. collected taxes owed by his former clients.

Additionally, citing a recent amendment of the Sentencing Guidelines, petitioner suggests that he is entitled to a 3–level reduction for "acceptance of responsibility" instead of the 2–level reduction reflected in his presentence investigative report ("PSI").

Finally, Schneider also seeks to set aside his sentence on the ground that he was denied effective assistance of counsel. He bases this claim on a number of grounds. First, he argues that his attorney should have accompanied him to his debriefings with the government. Petitioner claims that if his attorney had accompanied him to the meetings, he "would have been reassured that he was facing no other criminal charges" and he would have responded to the government's inquiries in such a way that the government

would have been satisfied with his level of cooperation. Second, petitioner claims that his counsel knew "that defendant Schneider's cooperation would be limited to the area of tax collections" yet neglected to enter this stipulation into the plea agreement. Third, petitioner argues that his counsel was remiss in not challenging his PSI. Indeed, petitioner speculates that his attorney conspired with the government to deny him a *Fatico* hearing. Petitioner now finds the following errors in the report: (1) petitioner suggests that the amount of tax loss suffered by the government as a result of the fraudulent tax returns prepared by his associates should not have been counted against him and that in any event the figure was calculated incorrectly; and (2) petitioner suggests that enhancements for "being an organizer," "using sophisticated means" and "preparing tax returns" amount to impermissible double counting.

Petitioner requests that this Court schedule an evidentiary hearing to determine the validity of his claims. He also seeks substantial discovery to support his claim that the government acted in bad faith when it failed to issue the § 5K1.1 letter. Finally, petitioner also requests that this Court appoint counsel for him to "handle discovery ... and a possible evidentiary hearing." [1]

## II. *DISCUSSION*

### A. *The Government's Failure to Issue the § 5K1.1 Letter*

Schneider argues that the government acted arbitrarily and in bad faith when it failed to issue the § 5K1.1 letter. Petitioner claims that as a result of his substantial cooperation with the government, the I.R.S. collected the taxes owed by his former clients. Schneider requests a variety of discovery materials and an evidentiary hearing to prove his claim.

Because Schneider did not object to the government's failure to move for downward departure at sentencing, this Court must determine whether he is now procedurally barred from raising this claim in a collat-

---

1. Petitioner also requests that this Court release him on bail so that he can personally handle all discovery matters and any evidentiary hearing this Court may order.

eral attack on his conviction. Ordinarily, where a defendant has failed to raise claims either at trial or on direct appeal, he or she cannot raise them in a § 2255 motion unless he or she can show "cause" for the failure and "actual prejudice" flowing from that failure. *See United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). However, because "there is no requirement that a defendant object to the violation of a plea agreement at the time of sentencing, a defendant's claim that his plea agreement was violated is not waived by his failure to raise the issue at sentencing...." *Paradiso v. United States,* 689 F.2d 28, 30 (2d Cir.1982) (*per curiam*), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983). Accordingly, this Court may reach the merits of this claim. *See Urbaez v. United States,* 1992 WL 209333, * 2–3, 1993 U.S. Dist. Lexis 12588, *5 (a petitioner is not procedurally barred from raising claim that government violated plea agreement in a § 2255 motion, despite fact that petitioner did not raise issue at sentencing).

■ Cooperation and plea agreements are interpreted according to the principles of contract law. *United States v. Rexach,.* 896 F.2d 710, 713 (2d Cir.1990). Under contract law, "where the agreement is conditioned on satisfaction of the obligor, the condition is not met 'if the obligor is honestly, even though unreasonably, dissatisfied.'" *Id.* (quoting *Restatement (Second) of Contracts* § 228, Comment a). Thus, where, ·as here, the terms of a plea agreement "leave acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied." *Id.* Accordingly, the government's refusal to move for a downward departure based upon Schneider's cooperation is subject to only limited review and may be challenged only for bad faith or misconduct. *United States v. Knights,* 968 F.2d 1483, 1487 (2d Cir.1992); *United States v. Agu,* 949 F.2d 63, 67 (2d

Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992).

■ Once a petitioner accuses the government of acting in bad faith, the government has the burden of articulating some legitimate rationale for its failure to move for downward departure. *See United States v. Khan,* 920 F.2d 1100, 1106 (2d Cir.1990). Subsequently, the burden shifts back to the petitioner to make "a showing of bad faith sufficient to trigger some form of hearing on that issue." *Id.*

■ Here, the government claims that it did not move for downward departure because Schneider was evasive during the debriefing sessions and failed to answer all the questions put to him. Indeed, petitioner himself concedes that he was less than forthcoming at these meetings, blaming his attorney for not accompanying him and thereby assuring him that his rights would be protected if he divulged the requested information. Under circumstances such as these, this Court credits the reasons given by the government for its decision not to move under § 5K1.1.

· Moreover, besides his bald assertion that the prosecution bore him a grudge and acted harshly towards him during the debriefing sessions, petitioner has not alerted this Court to any facts tending to show that the government was acting in bad faith.[2] Rather, petitioner simply disagrees with the prosecution's determination that he did not fully cooperate and desires that this Court set aside his sentence based on the simple fact that he believes he met his part of the bargain. Because petitioner has not met his initial burden of showing prosecutorial bad faith, this Court denies petitioner's motion to set aside his verdict on this ground without the need for discovery or an evidentiary hearing.[3]

**B.** *Schneider is not Entitled to a Three Point Reduction for Acceptance of Responsibility*

■ Schneider claims that this Court should correct his sentence to allow for a

---

**2.** Petitioner speculates that the prosecution wrongly denied him the § 5K1.1 letter to make up for the fact that his codefendants received light sentences.

**3.** Because this Court denies petitioner's request for discovery and an evidentiary hearing, his requests for appointment of counsel and release on bail are also denied.

three point reduction for acceptance of responsibility, instead of the two point reduction afforded him. Although the Guidelines were recently amended to provide for a sentencing reduction decrease of three levels for acceptance of responsibility in certain situations, this amendment is not retroactive and does not apply to Schneider.

Pursuant to 18 U.S.C. § 3582(c)(2), a court may only reduce a sentence of a defendant who has been sentenced to imprisonment based upon a sentencing range subsequently lowered by the Sentencing Commission if it "is consistent with applicable policy statements issued by the Sentencing Commission." The applicable policy statement issued by the Sentencing Commission is found in § 1B1.10 of the Guidelines, which provides that unless the Guidelines amendment is specifically listed in § 1B1.10(d), a reduction of sentence pursuant to 18 U.S.C. § 3582(c) is not consistent with the policy statement. The amendment providing a third level reduction for acceptance of responsibility is *not* listed under § 1B1.10(d). Accordingly, the reduction of sentence is inconsistent with the policy statement and this Court therefore has no authority under 18 U.S.C. § 3582(c) to grant the motion.

## C. *Ineffective Assistance of Counsel*

 The remainder of Schneider's claims are bottomed on his argument that he received ineffective assistance of counsel. In order for Schneider to prevail on this claim, he must satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. (1984). *See also United States v. Nino*, 878 F.2d 101, 103–04 (3rd Cir.1989) (holding that *Strickland* test applies to habeas petitioner seeking to vacate sentence). Under *Strickland*, petitioner first must show that counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–96, 104 S.Ct. at 2064–69. Moreover, when employing the *Strickland* test, a court must "[i]ndulge a strong presumption" that counsel's conduct

falls within "the wide range of reasonable legal assistance." *Id.* at 689, 104 S.Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 100–01, 76 S.Ct. 158, 163–64, 100 L.Ed. 83 (1955)).

 Schneider claims that his counsel was ineffective because he failed to accompany him to debriefing sessions with government officials. As a consequence of this failure, petitioner admits that he was less than forthcoming when responding to the government's inquiries. Schneider now claims that if his attorney was present, he could have assured Schneider that he would not open himself up to other criminal charges by responding forthrightly to the government's questions. It is clear from the record before the Court, that Schneider attended more than one debriefing session. If indeed, petitioner's lack of candidness was a result of his misunderstanding of the what the criminal consequences of his cooperation would be, he could have rectified the situation by conferring with his attorney after the initial meeting. Nothing in the record indicates that petitioner was foreclosed from taking this course of action. Accordingly, this Court finds that the mere fact that petitioner's attorney was not present at the cooperation meetings, does not render the representation he provided petitioner ineffective in the constitutional sense.

 Schneider also argues that his counsel was ineffective because although it was petitioner's desire that his cooperation was to be limited to providing the government information on tax-related matters, the plea agreement he signed required that he answer questions with respect to "any matters about which the Office may inquire." Plea Agreement at 3–4. Significantly, petitioner makes no claim that he was not aware of the terms of the plea agreement when he signed it. It is apparently petitioner's position that even though he accepted and understood the written plea agreement, this Court should find that his counsel was ineffective for failing to negotiate a plea agreement more to petitioner's liking.

Petitioner makes absolutely no showing that the government would have agreed to the terms petitioner now claims his attorney

should have negotiated. Indeed, to the contrary, the government argues that it would never have entered into a plea agreement with petitioner if petitioner's required cooperation was so narrowly defined. Accordingly, this Court finds that petitioner's attorney cannot be considered constitutionally ineffective for failing to negotiate terms which were unobtainable.

Finally, petitioner argues that his attorney was ineffective for failing to object to certain aspects of his PSI.[4] However, after considering petitioner's claims, this Court finds that the failure to object did not render Schneider's attorney constitutionally ineffective. Schneider argues that the PSI should not have attributed to him losses to the government incurred from the fraudulent tax returns prepared by his associates, whom he characterizes as independent contractors. The Sentencing Guidelines, however, do not support petitioner's position. Rather, the Guidelines militate in favor of holding co-conspirators jointly liable in tax evasion schemes. Thus, whether petitioner's co-conspirators were his employees or whether they were independent contractors has no bearing on the tax loss attributable to petitioner. *See United States v. Charroux*, 3 F.3d 827, 838 (5th Cir.1993) (Sentencing Guidelines favor holding "each defendant responsible not only for tax losses that he caused, but also for the tax losses caused by his co-defendants."); *Guidelines Manual* § 1B1.3 (conspirator and joint liability). Accordingly, petitioner's attorney was not remiss for failing to object to this portion of the PSI.

Schneider also argues that his attorney should have objected to that portion of the PSI which indicated that he caused a tax loss of between $1.5 and $2 million dollars, despite the fact that in his plea agreement he stipulated to having caused such a tax loss.[5]

Plea Agreement at 4. Section 2T1.3 defines tax loss as "28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax." The PSI characterized Schneider's fraudulent scheme as making use of false tax credits totalling $1.5 to $2 million dollars and indicates that the Court should calculate the tax loss attributable to him and thus his offense level by taking a 100% of that figure. The PSI failed to explain that Schneider and the government had stipulated to the amount of tax loss.

Schneider claims that his tax scheme made use of false deductions, not credits, and therefore his tax loss should have been calculated as 28% of the $1.5 to $2 million dollar figure. The error in Schneider's analysis is that he confuses the stipulated amount of tax loss as the amount by which he assisted his clients in reducing their income. However, the total amount of false deductions and credits[6] created by Schneider was in actuality millions of dollars more. The $1.5 to $2 million dollars discussed in the report only reflected a conservative estimate of the actual tax loss caused to the United States by Schneider's scheme at the time of the plea.

The tax effect of both false deductions and false credits was calculated by the I.R.S. agents involved and stipulated to by petitioner. The PSI's characterization of this amount as the result of tax credits, although a misnomer, results in the accurate treatment of this amount for Guideline calculation purposes. That is, 100% of the amount should be treated, as tax credits are treated, and used for the Guidelines calculation as the amount of taxes evaded. Any other result, would falsely limit petitioner's offense level. Thus, although the PSI somewhat inaccurately described how the offense level should

---

4. Because petitioner did not object to the PSI at sentencing, he has procedurally defaulted on this claim. *See United States v. Brody*, 808 F.2d 944, 947 (2d Cir.1986); *Urbaez*, 1992 WL 209333, *6, 1992 U.S.Dist. Lexis, *8. To avoid the waiver, Schneider must now show cause and prejudice. *United States v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). In order for attorney error to constitute cause for petitioner's failure to object at sentencing, peti-

tioner must show that his attorney was constitutionally ineffective. *See Urbaez*, 1992 WL 209333, *6, 1992 U.S. Dist Lexis at *8.

5. Guideline § 2T4.1(M) establishes a base offense level of 18 for that amount of tax loss.

6. The government contends that Schneider made use of both false deductions and false credits.

be calculated, the final result was correct. Accordingly, petitioner's counsel was not constitutionally ineffective for failing to object to the PSI.

[17] Without the benefit of any authority, Schneider argues that because he made restitution, the presentence report should have reflected a zero loss to the government. Although the Second Circuit has not directly ruled on the issue, it has stated that there is no reason to treat cases involving fraud and deceit differently from cases involving embezzlement and theft. *See United States v. Brach*, 942 F.2d 141, 143 (2d Cir.1991). *See also United States v. Krause*, 786 F.Supp. 1151, 1156 (E.D.N.Y.1992) (appropriate to sentence fraud-based crimes under Guideline commentaries for theft provisions). Moreover, in cases of embezzlement or theft, the Second Circuit has interpreted the definition of loss literally and has affirmed sentencing adjustments "based on the value of what was taken, not on the ultimate harm suffered by the victim." *Brach*, 942 F.2d at 143. Thus, despite the fact that Schneider claims that he made complete restitution,[7] a claim that this Court cannot substantiate, he is still not entitled to sentencing reduction. More importantly, his attorney can in no way be considered ineffective for failing to raise this objection to the presentence report.

[18] Petitioner also claims that this Court engaged in impermissible double counting when it enhanced his sentence for being a tax preparer, being an organizer and for using sophisticated means. "Double counting is legitimate where a single act is relevant to two [or more] dimensions of the Guidelines...." *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir.1992). Here, none of the enhancements are necessarily duplicative of the others. For example, a tax preparer can defraud the government using a simple scheme or can engage in an elaborate and sophisticated fraudulent tax evasion scheme. Thus, it is not impermissible double counting to enhance a defendant's sentence for being both a tax preparer and for using sophisticated means. *See Guidelines Manual* § 2T1.3, comment. 2. Moreover, one can be an orga-

nizer of criminal activity and not use sophisticated means. An individual can organize a gang of thugs to engage in simple street crime allowing for an enhancement for being an organizer but not for using sophisticated means. Conversely, a lone individual can perpetrate a sophisticated crime, thus allowing an enhancement for sophisticated means but not for being an organizer. Accordingly, petitioner's claim that his attorney rendered ineffective assistance of counsel for failing to object to the application of these three enhancements is without merit.

[19] Finally, this Court notes that petitioner's counsel was present and actively participated in his client's initial proffer with the government and was in continuous contact with the government during the entire cooperation period. Counsel negotiated a formal plea agreement for his client and was available and consulted by Schneider at all times before and through sentencing. Additionally, even during and after sentencing, petitioner's counsel attempted to obtain an opportunity for Schneider to cooperate with a view towards reducing his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure, which included communicating with the government on numerous occasions concerning the prosecution's evaluations of Schneider's attempts to continue cooperation. Thus, this Court finds that the representation afforded petitioner easily fell within the wide range of reasonable legal assistance and therefore petitioner's ineffective assistance of counsel claim must fail.

### III. *CONCLUSION*

For the above-stated reasons, petitioner's motion to set aside his sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety.

SO ORDERED.

---

7. According to Schneider, the government was able to assess and collect the taxes owed because of information he imparted to government agents.