UNITED STATES of America,
Plaintiff–Respondent,

v.

Nilo Medina CUETO, Defendant–
Petitioner.

No. CV 96–0307 AAH.
No. CR 91–0541(A) AAH.

United States District Court,
C.D. California.

Dec. 3, 1996.

Nora Manella, United States Attorney, Lawrence S. Middleton, Assistant U.S. Attorney, Los Angeles, CA, for U.S.

Nilo Medina Cueto, Safford, AZ, pro se.

I. Mark Bledstein, a Professional Law Corporation, Encino, CA, previously for Nilo Medina Cueto.

## AMENDED DECISION AND ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

HAUK, Senior District Judge.

This Amended Decision and Order supplants and is a substitution for this Court's initial Decision and Order signed on August 23, 1996, and entered by the Clerk of the Court on August 30, 1996.

### BACKGROUND

In May of 1991, the U.S. Customs Service intercepted a shipment of methamphetamine being smuggled into the United States from the Philippines. A successful sting operation led to the arrest of Petitioner Nilo Medina Cueto, a 40 year old male with no prior criminal history.

On May 29, 1991, shortly after Petitioner was arrested, two of his automobiles and $5,854 in U.S. currency were seized by the U.S. Customs Service, pursuant to 19 U.S.C. § 1595(a)(1)(A)-(B)[1] and 18 U.S.C. § 981,[2] respectively. On July 1, 1991, a Seizure Notification letter was sent by the U.S. Customs Service to Petitioner's last known address. This letter stated that each item seized by Customs was subject to civil forfeiture proceedings

Before trial, but after Petitioner violated the conditions of his bond, he was arrested again and another automobile and two firearms were seized by the U.S. Customs Ser-

---

**1.** Section 1595(a)(1)(A)-(B) states in relevant part: "if any officer or person authorized to make searches and seizures has probable cause to believe that any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States unlawfully [or] any property which is subject to forfeiture under any provision of law enforced or administered by the United States Customs Ser-

vice ... he may make application under oath ... to search for and seize such merchandise ..." *Id.* (West Ann.1996 Supp.).

**2.** Section 981 subjects property involved in trafficking or laundering to civil forfeiture to the United States. 18 U.S.C. § 981(a)(1) (West Ann. 1996 Supp.).

vice, pursuant to 49 U.S.C.App. §§ 781 and 782,[3] and 19 U.S.C. § 1595a(a)(1), respectively. On September 24, 1991, the two automobiles and U.S. currency seized by U.S. Customs on May 29, 1991, were administratively forfeited to the government because Petitioner failed to respond to the seizure notifications sent to his last address.

At an October 7, 1991 change of plea hearing, pursuant to a plea agreement with the government, Petitioner entered a plea of guilty to three drug-related charges. The Sentencing Hearing was scheduled for March 9, 1992.

On December 11, 1991, the third seized automobile and the two firearms were administratively forfeited to the government after Petitioner again failed to contest the forfeiture of those items.

On March 9, 1992, this Court sentenced Petitioner to over ten years in prison, followed by 5 years supervised release. On appeal to the United States Court of Appeals for the Ninth Circuit, the conviction and sentence was affirmed.

On January 17, 1996, Petitioner, filed this Motion To Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255. Section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(28 U.S.C. § 2255 (West Ann.1994)).

Pursuant to this statute, an evidentiary hearing should be granted "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (West Ann.1994). As the facts and the law set forth below

demonstrate, neither Petitioner's motion nor the files and records of this case show that he is entitled to any form of relief.

## DISCUSSION

Petitioner requests this Court vacate his sentence on the following grounds: (1) the Double Jeopardy Clause of the Fifth Amendment precludes his sentence; and (2) he received ineffective assistance of counsel during the sentencing phase.

### A.  The Double Jeopardy Clause

■ The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause prohibits the imposition of multiple punishments for the same offense in separate proceedings. *See North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

■ Petitioner argues that the government cannot convict a drug dealer of trafficking drugs while also seeking civil forfeiture of the proceeds of the illegal transactions because this is the imposition of multiple punishments. The application of such a rule, however, would prevent the government from prosecuting a drug dealer whose illegally obtained proceeds have been previously seized because the seizure and subsequent forfeiture would be considered "punishment." Such a conclusion simply cannot be right.

### 1.  Jeopardy Does Not Attach at the Time That Civil Forfeiture Proceedings Are Commenced, Conducted or Concluded

■ The Supreme Court has established a two-prong test for determining whether a separate civil sanction or proceeding raises Double Jeopardy concerns. It has held that the courts should look to Congress' intent and determine whether a "forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial." *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362, 104 S.Ct.

---

**3.** Sections 781–782, when read together, allow for the seizure and forfeiture of any vehicles used in the transportation or concealment of contra-

band. 49 U.S.C.App. §§ 781, 782 (West Ann. 1996 Supp.).

**1398**

1099, 1105, 79 L.Ed.2d 361 (1984) (citations omitted). In other words, this Court must determine whether the civil forfeiture proceedings at issue here were: (1) by nature criminal and punitive; and (2) intended by Congress to be criminal and punitive.

■ When determining if a civil sanction or proceeding constitutes "punishment," the Supreme Court has drawn clear distinctions between civil forfeiture proceedings and in *personam* civil penalties such as fines. While in some circumstances a civil penalty could be considered punitive by nature, a civil *in rem* forfeiture proceeding should not. *Various Items of Personal Property v. United States*, 282 U.S. 577, 580–81, 51 S.Ct. 282, 283–84, 75 L.Ed. 558 (1931) (concluding that the Double Jeopardy Clause was inapplicable to the forfeiture proceedings of a previously convicted corporation). In *Various Items*, the Court reasoned that while a civil action to recover penalties was much like a criminal prosecution in that it is the wrongdoer that the government proceeds against, in an *in rem* forfeiture proceeding "[i]t is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned." *Id.* at 581, 51 S.Ct. at 284; *see also United States v. Ursery*, —— U.S. ——, ——, 116 S.Ct. 2135, 2138, 135 L.Ed.2d 549 (1996) (holding that "civil forfeitures generally" do not constitute punishment for purposes of the Double Jeopardy Clause).

The forfeiture proceedings at issue here were similarly commenced against Petitioner's property. Although the various items of personal property forfeited to the government were seized in connection with the illegal conduct of the Petitioner, unlike a criminal hearing, it was the illegal use of the property that was the subject of the proceeding and not the culpability of the Petitioner.

■ Moreover, even if some types of civil actions commenced by the government could be considered punishment for double jeopardy purposes, it certainly does not follow that all civil forfeiture actions also raise double jeopardy concerns. While civil penalties are designed to be a form of liquidated damages for the harms suffered by the government, *see e.g. Rex Trailer Co. v. United States*, 350 U.S. 148, 153–54, 76 S.Ct. 219, 222, 100 L.Ed.

149 (1956) (upholding the constitutionality of an alternative "liquidated damages" remedy allowing for the recovery and retention of fraudulently obtained government property under the Surplus Property Act of 1944), civil forfeitures are designed primarily to disgorge the fruits of an illegal action and compensate the government for any of its costs. In other words, civil forfeiture statutes such as §§ 781 and 782, and § 981, while having certain punitive aspects, serve very important nonpunitive goals. *See Ursery*, —— U.S. at ——, 116 S.Ct. at 2148 (citing *Bennis v. Michigan*, 516 U.S. ——, ——, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996); *89 Firearms*, 465 U.S. at 364, 104 S.Ct. at 1105; *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687–88, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974)) (explaining that the "forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes"). Although Petitioner claims to have been penalized by the forfeiture of $5,854 in cash and three automobiles worth several thousand dollars, this amount pales in comparison to the maximum punishment of life imprisonment and $7,000,000 in fines Petitioner could have faced at trial. Such a disparity suggests that Petitioner's forfeitures were nothing more than the remedial recoupment of the government's costs and a confiscation of the proceeds of Petitioner's drug operations.

Petitioner's arguments are also ill-founded upon the recently overruled Ninth Circuit decision of *United States v. $405,089.23 in US. Currency*, 33 F.3d 1210 (9th Cir.1994), amended, 56 F.3d 41 (9th Cir.1995), *rev'd sub nom. United States v. Ursery*, —— U.S. ——, ——, 116 S.Ct. 2135, 2138, 135 L.Ed.2d 549 (1996). In that case, the Ninth Circuit held that the Double Jeopardy Clause prohibits the government from both punishing a defendant for a criminal offense and forfeiting his property for that same offense in a separate judicial forfeiture proceeding. *$405,089.23 in U.S. Currency*, 33 F.3d at 1216–19. Petitioner's reliance on *$405,089.23 in U.S. Currency* is misplaced, however, since that

case, along with a similar case from the Sixth Circuit, was reversed by the Supreme Court earlier this year. In *United States v. Ursery*, the Court held that the Ninth Circuit was wrong to conclude that civil forfeitures are punitive for double jeopardy purposes. *Id.* at ——-——, 116 S.Ct. at 2138–39.[4] The Court concluded that civil forfeiture statutes, such as § 981, are not so "punitive in fact"' so as to be considered "punishment," nor did Congress intend these civil proceedings to be criminal and punitive. *Id.* at ——, 116 S.Ct. at 2147. The Court reasoned that because "forfeiture proceedings under the customs laws are *in rem*, ... '[i]n contrast to the *in personam* nature of criminal actions,'" a civil forfeiture proceeding is not "punishment" because "Congress specifically structured these forfeitures to be impersonal by targeting the property itself." *Id.* (quoting *89 Firearms*, 465 U.S. at 363, 104 S.Ct. at 1105 (citation omitted)).

Therefore, civil forfeiture can be an appropriate adjunct to criminal punishment, *see United States v. Cretacci*, 62 F.3d 307, 310 (9th Cir.1995); *United States v. One 1978 Piper Cherokee Aircraft*, 37 F.3d 489, 496 (9th Cir.1994) (Rymer, J., concurring), especially for drug-related prosecutions. *See Ursery*, —— U.S. at ——, 116 S.Ct. at 2148.

### 2. An Uncontested Administrative Forfeiture is not "Punishment"

Petitioner's criminal conviction and administrative forfeiture of contraband were not "multiple punishments" because he could not have been punished for the forfeiture of property for which he made no claim of ownership.

Notice of the impending forfeiture proceedings was sent to Petitioner's residence inviting to file a claim. He did not do so. Similarly, in *United States v. Torres*, 28 F.3d 1463 (7th Cir.1994), a defendant was also sent notice inviting him to make a claim in a civil forfeiture proceeding and he did not. The Seventh Circuit held that "[a]s a result, he did not become a party to the forfeiture ..., the [property] was forfeited without opposition, and jeopardy did not attach. You can't have double jeopardy without a former jeopardy." *Id.* at 1464 (citing *Serfass v. United States*, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)). Therefore, because Petitioner did not file a claim upon receipt of notices describing the commencement of civil forfeiture proceedings, the property was administratively forfeited to the government and jeopardy did not attach to the non-party proceedings. *See United States v. Kemmish*, 869 F.Supp. 803, 805 (S.D.Cal.1994) (citing *United States v. Halper*, 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) (explaining that because Double Jeopardy is a personal constitutional right, a defendant was not placed in jeopardy when he failed to file a claim in an administrative forfeiture proceeding since he was a non-party to that proceeding)).[5]

Petitioner made a choice not to contest the administrative forfeiture of his alleged property. Because he elected to forego his opportunity to challenge the forfeiture of alleged contraband, he cannot now claim the protection of a *personal* Constitutional right. *See United States v. Scott*, 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978) (hold-

---

4. In fact, the Court went on to explain that this country has a long history of allowing the government to seek forfeiture actions while also pursuing a criminal prosecution from the same set of events. *Id.* at ——, 116 S.Ct. at 2140 (citations omitted) (explaining that for over two hundred years Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events).

5. Notice of the intended forfeiture was mailed to Mr. Cueto's residence at the time of his arrest. (U.S. Customs Rpt., Pl.'s Exh. 6 at 1.) Following his release on bail, Petitioner absconded from Pretrial Services supervision and became a fugitive until he was arrested again by the U.S.

Marshal in August. (Middleton Decl., Pl.'s Exh. 7 at 3.) Petitioner should not now be allowed to claim lack of sufficient notice when he was a freely-roaming fugitive of justice at the time when the first seizure notice was sent to his residence. *See Sarit v. Drug Enforcement Administration*, 987 F.2d 10, 14 (1st Cir.), *cert. denied*, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993) (stating that notice is sufficient if sent to last known address as of date of sending); *see also United States v. Clagett*, 3 F.3d 1355, 1357 (9th Cir.1993) (remanding to district court and directing it to consider the holding in *Sarit*). In essence, his choice to be a fugitive of justice was also his voluntary choice not to make a claim in the civil forfeiture proceedings.

ing that "[t]he Double Jeopardy Clause which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice").

**B.  Ineffective Assistance of Counsel**

Petitioner's ineffective assistance of counsel argument is based upon his attorney's alleged failure to: (1) advise him of the maximum and mandatory minimum punishments for his crimes;  (2) pursue the recovery of property seized by government agents during the investigation;  (3) object to a two-point enhancement of his offense level because of his use of a firearm during the commission of drug offenses;  and (4) assert a double jeopardy claim based on the forfeitures of some of his property to the government.  The fourth claim is meritless for the reasons discussed in Part A, *supra.*  Petitioner's first through third claims also lack a valid factual or legal basis.

[7]  A petitioner's claims of ineffective assistance of counsel can be appropriately raised in a notion to vacate or set aside prior sentence, even if overlooked on direct appeal, because resolution of this issue often requires consideration of matters outside the record on direct appeal. *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993) (citing *United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990)); *Beaulieu v. United States,* 930 F.2d 805, 807–8 (10th Cir.1991); *Thor v. United States,* 574 F.2d 215, 218 (5th Cir. 1978).  This type of motion, however, should only be entertained by a district court when extraordinary circumstances are present. *United States v. Robinson,* 8 F.3d 398, 405–6 (7th Cir.1993).

In order to establish an ineffective assistance of counsel claim on collateral attack of a federal sentence, Petitioner must demonstrate two things: (1) that counsel's representation fell elow an objective standard of reasonableness;  and (2) that there is a reasonable probability that, ut for counsel's errors, the result from the proceeding would have been different. *See Schneider v. United States,* 838 F.Supp. 709, 715 (E.D.N.Y.

1993) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (holding that this two-part *Strickland* test applies to habeas petitioners seeking to vacate sentence).  There exists a strong resumption, however, that an attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

[8]  Petitioner's first claim fails because he cannot establish that, but for his attorney's alleged failure to advise him of the maximum and mandatory minimum punishments for his crimes, ere is a reasonable probability that his sentence would have been different.  The record clearly indicates that regardless of what Petitioner was told by his attorney, this Court explained to him the consequences of pleading guilty before he formally entered his plea.  The transcript of the hearing documents the following:

> THE COURT: The maximum imprisonment is life imprisonment and the minimum is imprisonment for 10 years.  And the maximum fine?
>
> MR. BLEDSTEIN: I believe it's $4 million, your Honor.
>
> THE COURT: $4 Million.  Yes, sir, that's correct.  Do you understand that, Mr. Cueto?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you still want to plead guilty?
>
> THE DEFENDANT: Yes.

(R.T. 10–7–91, Exh. 1 at 13–14).[6]

Even if Petitioner's ineffective assistance of counsel claims were taken at face value, this Court's admonitions rendered any of his attorney's alleged errors harmless.

■  Petitioner also asserts that his "functional illitera[cy]" in the English language also resulted in ineffective assistance of counsel.  There is no evidence, however, to support this claim.  Petitioner's claim of illiteracy is refuted by his own statements on the record:

**6.**  "R.T." here refers to the reporter's transcript of the October 7, 1991 hearing concerning De-

fendant's change of plea.

THE COURT: Let's ask the defendant himself. Do you want an interpreter?

THE DEFENDANT: I don't need an interpreter, your Honor. I understand.

THE COURT: You don't need an interpreter? What do you speak?

THE DEFENDANT: English and Tagalog.

THE COURT: Do you understand it?

THE DEFENDANT: I understand English and speak English.

(R.T. 3–9–92, Exh. 2 at 5).[7]

Moreover, regardless of Petitioner's now-alleged deficiencies in understanding the English language, a certified interpreter was present at all relevant times during the court proceedings and interpreted all of the discussion between the Court and Defendant. (*Id.* at 5–6). Therefore, any alleged unreasonable attorney assistance was harmless error.

Petitioner's second claim concerns his attorney's failure to pursue the property seized by and forfeited to the government. This argument is meritless because constitutional guarantees of effective assistance of counsel do not extend to civil matters. *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir.1985). The administrative forfeiture of Petitioner's property was a separate civil proceeding apart from his criminal prosecution, and is therefore irrelevant as it pertains to criminal sentencing.

Petitioner's third claim is that his sentence is too severe because his attorney did not object to a two-point enhancement of his offense level for the use of a firearm during the commission of a drug offense. The record clearly shows, however, that his attorney did object the offense level enhancement on the grounds that the Defendant "was not personally armed" during the commission of a crime. (R.T. 3–9–92, Exh. 2 at 14). Thus, Petitioner was obviously not prejudiced by his attorney's conduct with respect to the enhancement issue.

Finally, Petitioner's fourth claim of insufficiency of counsel is without merit because, as discussed in Part A, *supra*, jeopardy did not attach to the administrative forfeiture action.

Therefore, because double jeopardy was not a valid defense, Petitioner was not prejudiced by attorney's failure to raise it as a defense, nor was his attorney's decision to disregard it by any means outside the bounds of professionally reasonable conduct.

*CONCLUSION*

NOW THEREFORE, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED:

That Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 255 is DENIED.

SO ORDERED.

---

7. "R.T." here refers to the reporter's transcript of the March 9, 1992 Sentencing Hearing.